K. E. HEGNA et al., Appellees, v. MARY H. PETERS et al., Appellants.

**EVIDENCE: Parol As Affecting Writings—Nonapplicability of General Rule.** Parol evidence of witnesses (not parties to an action) to the effect that, before they purchased certain lots, the owner represented *that all lots in the tract were under building restrictions,* may be admissible, even though said witnesses hold under deeds containing such restrictions.

**EVIDENCE: Relevancy, Materiality, and Competency—Surrounding Circumstances.** The purchaser of a lot under certain building restrictions; in an action to enjoin the violation of such restrictions by a grantee whose deed did not contain the restrictions, may, for the purpose of showing the circumstances and conditions attending the making of the contract, testify that the grantor asserted to

him, at and prior to the time of his purchase, that the entire tract was restricted by building regulations.

**EVIDENCE:** Relevancy, Competency, and Materiality—Advertisements Tending to Prove General Public Knowledge. Newspaper advertisements tending to show the existence of building restrictions as to certain lots, may be admissible as tending to show *general public knowledge* of such restrictions, even though the party against whom such advertisements are offered is not shown to be responsible therefor.

**COVENANTS:** Building Restrictions—Omission From Deed—Effect. An owner of a platted tract of land who has, in a series of conveyances thereof, reserved specified building restrictions and rendered them enforcible, not only by himself, but by each grantee in all other conveyances, will not, irrespective of the statute of frauds, be permitted, in a subsequent conveyance, to repudiate said established plan and scheme by deeding a portion of said tract without said reservations; nor will said last purchaser be permitted to violate such restrictions *when he had general knowledge thereof at the time of his purchase.*

Headnote 1: 22 C. J. p. 1292. Headnote 2: 22 C. J. p. 1186. Headnote 3: 22 C. J. p. 1189. Headnote 4: 18 C. J. p. 395.

*Appeal from Polk District Court.*—O. S. FRANKLIN, Judge.

JANUARY 20, 1925.

AN action to enjoin the defendants from violating certain alleged building restrictions. The court granted the relief prayed for. Defendants appeal.—*Affirmed.*

*Parrish, Cohen, Guthrie & Watters,* for appellants.

*Jordan & Jordan,* for appellees.

ALBERT, J.—Mary H. Peters was the owner of a tract of land lying between Forty-first and Forty-second Streets and Forest Avenue and University Avenue in the city of Des Moines. In 1912, she platted this tract of land into 48 lots. In the same year, or shortly thereafter, she made a contract with the plaintiffs herein to sell to them Lot 2 in said plat, and later said lot was deeded to the plaintiffs. This contract and deed had

identical provisions as to certain building restrictions, to which reference will hereafter be made. Later, and shortly before the commencement of this action, Mary H. Peters deeded to defendant J. Paul Neal, two or three lots in said addition. While the deed to Neal is not set out, it seems to be conceded by all parties concerned·that the building restrictions referred to were not contained in this deed. The evidence satisfactorily shows that Neal is about to construct a store building or flat on the property so purchased by him. It is to be noted, in passing, that neither of the defendants introduced any testimony in this case.

The building restrictions in the aforesaid deed of plaintiffs and the contract with Mary H. Peters are quite extensive; but, so far as we are concerned with them, summarized, they provide that the grantee is bound to use the property conveyed for residence purposes exclusively until the first day of January, 1932, and for no other purpose whatsoever. It marks out the distance from streets within which building of all kinds is prohibited, and the minimum cost for the residences to be built, and states that no store, apartment house, or flat is to be erected, and gives to the vendor and to every purchaser of any other lot or portion of a lot of said plat the right to enforce these restrictions against the vendee in the deed, but does not, in terms, give the vendee the right to enforce these same restrictions against the purchaser of other lots in the plat, or against the vendor Mary H. Peters.

Of these 48 lots in this plat, 36 had been sold by Mary H. Peters prior to the time of conveyance to Neal. These 36 deeds were introduced in evidence, and, so far as material to this case, are identical, as far as the building restrictions are concerned.

While Neal, in substance, files a general denial herein, the evidence satisfactorily shows that he knew of and was advised that building restrictions existed on all this property before he bought it. This being so, whatever restrictions there were, will be binding on him, although omitted from his deed. (See authorities hereinafter cited.)

The evidence in the case shows that Mary H. Peters had stated and represented to the various witnesses that all lots in this plat were under building restrictions. A large number

of advertisements in the newspapers of the city of Des Moines were offered in evidence, and objection was made thereto on the ground that there was no showing that Mary H. Peters inserted or authorized the insertion of said advertisements in the newspapers.

Several of the purchasers of lots in this plat testified that Mrs. Peters represented to them, before they bought their property, that the whole territory was to be restricted; and some of them testified to assertions made by her after they purchased their lots.

The questions here to be considered are narrowed down to three.

First, the objection to the testimony of the witnesses other than the plaintiffs herein, as to representations made by Mrs. Peters to them before they bought their lots, on the ground

1. EVIDENCE: parol as affecting writings: non-applicability of general rule.

that, they having bought by written contract, parol evidence was not admissible to change or vary the terms of the writing.

It is to be remembered that none of these witnesses are parties to the contract and deed made by Mrs. Peters and the plaintiffs, and are strangers thereto. These witnesses are not in this court seeking to enforce their written contracts, whatever they were, with Mrs. Peters, and the parol-evidence rule does not apply to them. Their testimony was not introduced for the purpose of changing or varying their contracts, but to show that at all times Mrs. Peters represented and stated that ·each and all of these lots were under building restrictions. For this purpose it is admissible, if for no other.

As to the objection to the plaintiffs' testifying to the representations made by Mrs. Peters at and before the time they purchased said property, and not incorporated into their con-

2. EVIDENCE: relevancy, materiality, and competency: surrounding circumstances.

tract and deed, the statements that she made being, in substance, that all of the said lots in the said territory were to be restricted, or a restricted district. This testimony was at least admissible to show the surrounding conditions and circumstances attending the making of the contract.

A purchaser of real property subject to building restrictions of which he had knowledge when he obtained title, is bound

by such restrictions, even though they be not recited in his deed. *Ducster v. Alvin,* 74 Ore. 544 (145 Pac. 660).

The general appearance and character of the tract and the nature of the improvements thereon, ought to indicate to one interested, the presence of some character of building restrictions. *Miles v. Clark,* 44 Cal. App. 539 (187 Pac. 167); *Tallmadge v. East River Bank,* 26 N. Y. 105, 111.

Uniformity in the restrictions imposed upon the several lots in a residential district is one of the strongest proofs of the existence of a building scheme. *Hooper v. Lottman* (Texas Civ. App.), 171 S. W. 270.

Second, it is further urged that the advertisements in the newspapers were not admissible because there is no showing that Mrs. Peters inserted the same, or that they were inserted in the newspapers with her knowledge, consent, and authority.

3. EVIDENCE: relevancy, competency, and materiality: advertisements tending to prove general public knowledge.

We are of the notion that these newspaper advertisements were not binding on Mrs. Peters, but feel that they were admissible for what they may be worth, in showing that it was publicly known and understood that this plat was a restricted district.

The third proposition is that, by reason of the statute of frauds of this state, and the failure of the plaintiffs' contract and deed to confer upon them their right to enforce the building restrictions against any other lot owner in this platted territory, parol testimony is not admissible to show that Mrs. Peters stated and represented to them, at the time of their purchase of this property, that all of the lots in the plat were to be similarly restricted. This seems to be the crux of this lawsuit.

4. COVENANTS: building restrictions: omission from deed: effect.

It is quite apparent from this record that defendants gave to the vendor and to every other lot owner in this plat the right to enforce the building restrictions against the plaintiffs herein. It is equally true that such a deed made to each of the other purchasers of lots in this territory, gave the plaintiffs the right to demand that the purchaser should abide by the identical building restrictions that are contained in the plaintiffs' deed.

Leaving out of consideration the testimony of the plaintiffs herein, and also the advertisements in the newspapers, the court

is abundantly satisfied that it was the intention of Mrs. Peters to lay out this subdivision under a general scheme or plan adopted and made public by her for the development of the property; that she contemplated a restriction as to the use to which the building lots were to be put, and to make of it wholly a residential district, under the restrictions set out in the plaintiffs' deed; and that she carried out this intention by placing the restrictions in the deeds of the 36 lots she had already disposed of. The evidence shows that she was of this notion and fully carried out the same during all the years since 1912 down to a very short time before she conveyed to Neal. The purchasers of lots in said territory seem all to have abided by these restrictions, and the territory had been built up into a very fine residential district. The fact that she may have later thought that she had discovered that she was not bound by these building restrictions, or that she made deed to Neal without including therein the restrictions, does not detract from the fact that she had and carried out such original plan or scheme to make this territory a restricted district.

In *Johnson v. Robertson,* 156 Iowa 64, 80, it is said:

"All that is necessary is a clear manifestation of the intention of a person who is the source of title, to subject one parcel of land to a restriction in its use for the benefit of another, whether that other belong at the time to himself or to third persons, and sufficient language to make that restriction perpetual."

After citing numerous texts, we further say:

"From these decisions it will be observed that these building restrictions or agreements, particularly where negative in character, create equitable easements, amenities, or servitudes, and that they may be enforced by anyone interested in the property, without regard to privity either of contract or estate, and no matter whether the covenant may be said to run with the land or not."

The leading case in the United States on this question of a general plan or building scheme is *DeGray v. Monmouth Beach House Club Co.,* 50 N. J. Eq. 329, 340 (24 Atl. 388), the central thought of which is epitomized as follows:

"Where there is a general scheme or plan, adopted and made public by the owner of a tract, for the development and

improvement of the property, by which it is divided into streets, avenues, and lots, and contemplating a restriction as to the uses to which buildings or lots may be put, to be secured by a covenant embodying the restriction, to be inserted in each deed to a purchaser, and it appears, by writings or by the circumstances, that such covenants are intended for the benefit of all the lands, and that each purchaser is to be subject to and to have the benefit thereof, and the covenants are actually inserted in all deeds for lots sold in pursuance of the plan, one purchaser and his assigns may enforce the covenant against any other purchaser and his assigns, if he has bought with knowledge of the scheme and the covenant has been part of the subject-matter of his purchase.''

''The deeds contained no similar covenant on the part of the grantors as to the use of the remaining lands, nor a covenant to insert the same covenant in deeds of other portions of the tract; but all deeds from the trustees do, in fact, contain the covenant.'' *DeGray v. Monmouth Beach House Club Co.,* 50 N. J. Eq. 329, 334.

The rules applicable to the enforcement of the restrictive covenants under such a situation are stated in *Hooper v. Lottman* (Texas Civ. App.), 171 S. W. 270.

Under the above citations, Neal, having bought with knowledge of building restrictions, is bound thereby, although they were not contained in his deed.

In *Allen v. City of Detroit,* 167 Mich. 464 (133 N. W. 317), it is said:

''The law is well settled that building restrictions of the character shown are in the nature of reciprocal, negative easements, and may be created upon a division and conveyance in severalty to different grantees, of an entire tract. That a portion of the conveyances do not contain the restrictions will not defeat the same. Although some of the lots may have written restrictions imposed upon them * * * if the general plan has been maintained from its inception, if it has been understood, accepted, relied on, * * * by all in interest, it is binding and enforcible on all *inter se.* It goes with the land, and is equally binding on all purchasers with notice.''

Just prior to the sale of these lots to the defendant Neal by

Mrs. Peters, what was the status of this property already conveyed under the 36 deeds, and what were the rights of the respective parties therein? Having bought under the same restrictions, each party owning a lot, by reason of the reciprocal clauses in the respective deeds, could enforce these restrictions against any other lot owner in the district. It is equally true that Mrs. Peters, having reserved the same right to herself, could insist on compliance with these restrictions; and the common grantor, having brought about this condition by these restrictions in all these deeds, has conclusively established, by her own acts, that it was her intention, plan, and scheme to make of this territory a restricted district, not only for her own benefit, but for the benefit of lot owners in said district. This being so, she cannot, after ten or more years, gainsay the same; and the defendant Neal, having bought with the knowledge of restrictions on this property, even though he did not know the details thereof, is bound by such restrictions.

It will be noted from a perusal of cases herein cited, that, where there is a plan or scheme for a restricted residential district, the fundamental principle underlying such a plan is that the restrictions are for the mutual benefit of all property owners in the district, and, impliedly at least, each and all of the property owners in the district are entitled to the benefits of such a plan or scheme, regardless of whether the same is marked out in the deeds or not.

In the light of the rules of law herein laid down, we conclude that the statute of frauds does not apply, and that the ruling of the district court was correct; and the same is approved.

The district court judgment, among other provisions, contains the following:

"Mary H. Peters and J. Paul Neal, and each of them, be and they are hereby enjoined * * * from erecting any building upon the above tract nearer than 40 feet from the street running north and south, and nearer than 50 feet from University Avenue, or constructing any residence thereon costing less than $3,000, and enjoining and restraining the defendants and each of them from making any conveyance without incorporating therein the building restrictions above stated."

To avoid any misunderstanding, these two clauses in the decree will be limited by adding thereto the words, "until the first day of January, 1932." With this modification, the ruling of the district court is affirmed.—*Modified and affirmed.*

FAVILLE, C. J., and EVANS, STEVENS, ARTHUR, and DE GRAFF, JJ., concur.