## LEVI K. FULLER *v.* JOHN ARMS.

### [IN CHANCERY.]

### *Deed. Construction. Condition.*

The defendant, by deed of warranty, conveyed certain land to S. by metes and bounds, and in the premises of the deed, immediately following the description, was this clause: "Conditioned that no building or erection is ever to be made on said land, except a dwelling-house and out-buildings for the same, or such other buildings and erections as would not affect the rights, privileges, and interests of said Arms, or his heirs or assigns, to a greater degree than a dwelling-house and out-buildings as aforesaid would affect his and their rights, interests, and privileges; the said Arms being now the owner of a house and land westerly of, and near, said premises; and conditioned, also, that no building is to be erected on said land, which shall extend more than twenty feet southerly of the main body of the dwelling-house now owned and occupied by the said John Arms." In all other respects, said deed was in the usual form of a warranty deed without condition.

*Held,* that said clause did not constitute a condition precedent or subsequent; nor a covenant that the grantee would abide by the terms thereof; but was a part of the description of the estate, or interest, which passed by the deed to the grantee, and showed, with the rest of the description, what rights in the land passed to the grantee, and what were left remaining in the grantor; and that, the land passing to the grantee with the use thereof thus restricted, those claiming under the grantee could not make erections thereon in violation of those restrictions.

APPEAL from the court of chancery:

The bill set forth that John Arms, the defendant, on the 17th day of August, 1853, conveyed to Roswell G. Shurtliff, by warranty deed, the land in question, situate in the village of Bellows Falls, describing it by metes and bounds, "conditioned that no building or erection is ever to be made on said land, except a dwelling-house and out-buildings for the same, or such other buildings and erections as would not affect the rights, privileges, and interests of said Arms, or his heirs or assigns, to a greater degree than a dwelling-house and out-buildings as aforesaid would affect his and their rights, interests, and privileges; the said Arms being now the owner of a house and land westerly of, and near, said premises"; and conditioned, also, that "no building is to be erected on said land, which shall extend more than twenty feet southerly of the main body of the dwelling-house now owned and occupied by the said John Arms"; that the defendant was at the time of the execution of said deed, and still is, the owner of the house and lot opposite said land on the west side of the street; that said Shurtliff and

his wife conveyed by deed the same premises to Swett F. Brown, on the 14th day of May, 1858, subject to the same restriction as to erections, " provided that nothing herein contained shall prevent the erection of a church on said lot, which shall not extend more than twenty feet south of the main body of said Arms's house " ; that said Brown conveyed said premises to the First Baptist Society of Bellows Falls, on the 12th day of October, 1866, subject to the restrictions and provisos aforesaid ; and that the said society conveyed to the orator on the 16th day of March, 1872, the northerly portion of said premises, describing the same by metes and bounds, to hold *in trust* for said society ; that the orator had undertaken to build, and still proposed to erect, a dwelling-house and out-buildings thereon, suitable for a parsonage ; that in or about the year 1858, said society erected a meeting-house upon the first above described premises, which they had hitherto used as a place of worship ; that the said Arms threatened to prevent the orator from making such erections, and to vex and harass him by suits at law, or other process, and hinder and prevent him from executing his charitable purposes in the erection of such parsonage. Prayer, that the defendant be restrained from interfering with the orator, or in any way preventidg him from erecting, on the premises conveyed to him, a dwelling-house and out-buildings, suitable for a parsonage, and for further relief.

The said condition in said first named deed was in the premises of the deed, and immediately followed the description of the land conveyed. In all other respects, said deed was in the usual form of a warranty deed without condition.

The answer admitted the several conveyances and the conditions thereof, as alleged in the bill. Averred that the premises so conveyed were situated on the terrace west of, and fronting, the " square," so called, in the village of Bellows Falls, and that the defendant's dwelling-house, and the grounds connected therewith, lie immediately west of said premises, and that said dwelling-house and grounds were so situated that a view might be had therefrom in an easterly direction over the lands so conveyed, of said square, and of that portion of the village lying east of the square ; also, a view of the Connecticut River easterly of said village, and for a long distance both north and south of said village, together with a view of the mountain scenery east of said river ; and that said views are of great beauty, and add in a great measure to the value of the defendant's said dwelling-house and

grounds. Admitted the erection of a church on said premises, and averred that the same was erected in lieu of the right of the defendant's said grantees to erect a dwelling-house and out-buildings thereon, as provided for in the condition contained in his deed to said Shurtliff, and that any further erection on said premises would have the effect to interfere with, and obstruct, the views from the defendant's said dwelling-house and grounds, and render the same of much less value than if no such erections should be made. Admitted that the orator had undertaken, and still threatens, to erect on that portion of said premises conveyed to him in trust, a dwelling-house and out-buildings, and insisted that the orator had no right to erect such dwelling-house and out-buildings thereon, without the defendant's consent, and that by erecting said church, the said Brown, and his grantees, had forfeited all rights which they had to erect a dwelling-house and out-buildings on any part of the premises so conveyed; and admitted that the defendant had forbidden the orator to make any erection on said premises, but denied that he had in any way threatened to vex or harass the orator, to prevent him from making such erections.

The answer was traversed, and testimony taken

The defendant's testimony was mainly as to the character and extent of the view from the defendant's house and grounds, and as to the extent the erections proposed by the orator would obstruct said view, and affect the value of said property, and tended to support the allegations of the bill. The court of chancery, at the September term, 1872, dismissed the bill; from which decree the orator appealed.

*Charles N. Davenport*, for the orator.

1. It will be noticed that there is no clause of re-entry in the deed, nor does it declare that in any contingency the estate conveyed shall cease, or the deed become void.

2. It is unimportant to consider the second clause in this deed, because the orator cannot erect upon the land conveyed to him any building which will extend " twenty feet southerly of the main body " of the defendant's dwelling-house. It is with the northerly part of the lot that the orator has to do, and therefore, it is the first clause that the orator desires the court to construe, before he makes his contemplated erections.

It will probably be claimed that this clause is operative, either as creating a " condition subsequent," which, if not performed, will work a forfeiture of the estate to the grantor, or as a covenant binding upon, and running with, the land, wherever it may be conveyed.

It is neither the one nor the other. It is too vague, general, and uncertain in its terms and provisions, to be operative either as a covenant or a condition. It will not be denied that the grantor, Shurtliff, had the right to erect a dwelling-house and out-buildings for the same. What was to be the size and dimensions of this dwelling-house ? Who was to judge when, where, and how, that dwelling should be erected ? What out-buildings could be erected ? Was he limited to one barn, a shed, a carriage-house, an ice-house, a pig-stye ? Might he not, if inclination or taste prompted it, erect a conservatory or greenhouse ? Had Arms the right to dictate or control as to these erections ? If he chose not to erect a dwelling-house and out-buildings, he had a right to build " such other buildings and erections as would not affect the rights, privileges, and interests of said Arms, or his heirs and assigns," &c. If this means any thing, it means that the grantee had the right to build just such erections on the land as he pleased, provided the " rights, privileges, and interests " of Arms, his heirs and assigns, would not be affected to a greater degree than by building just such a dwelling-house, as to form and construction, as his means, inclination, and taste might prompt, surrounded by just such out-buildings as his judgment of his own needs might impel him to build. What " right, interest, or privilege " of Arms, or his " heirs and assigns," can be affected ? By what means can this court ascertain how the erection of a particular building in a particular place on this lot, will affect any right, interest, or privilege of Arms ?

The truth is, these high-sounding words do not represent ideas. They were inserted in the deed with no well defined notion of their meaning or application. It is not claimed by the defendant that the erection of a parsonage will impair any " right " or " privilege," which appertains to his realty, like a right of way, or other easement. He says in his testimony that such an erec-

tion will "cut off a portion of the view" from his house. He says in substance that there is a beautiful landscape in front of his house, comprising a view of the island at Bellows Falls, Fall Mountain, opposite, the river and valley above and below.

No man has any exclusive "right or privilege" to, or "interest" in, a landscape. To view and enjoy the beauty of the earth, is a privilege belonging to all God's creatures alike. Hence these words are not applicable for any such purpose. That the parties could not have had in contemplation any prospective impairment of the defendant's landscape, is apparent from the omission to use language appropriate to prevent it.

3.    Conditions subsequent, especially when relied upon to work a forfeiture, must be created by express terms, and are construed strictly.  4 Kent, 129 ; 1 Washb. Real. Prop. 447.  And like other parts of a deed, should always be construed most strongly against the grantor, "for they are his words."  2 Hill. Ab. 335, § 12 ; *Worthington* v. *Hyler*, 4 Mass. 205 ; *Tenney* v. *Beard*, 5 N. H. 58 ; *Mills* v. *Catlin*, 22 Vt. 98.

The restriction, if any exists in this clause, is personal to Shurtliff.  There is no attempt made to bind his grantors or assigns. It is like a case in New Hampshire, in this respect, where a deed of warranty contained this clause : "Provided nevertheless, if the said George Simpson shall neglect to keep up and maintain forever, at his own expense, a good and lawful fence, constructed of wood or stone, on the line between his own land and land of said grantors, then this deed to be void."  George Simpson died leaving his widow in possession in her own right, as well as that of guardian of a minor child of the deceased.  She wholly neglected for three years after notice by the grantors, to maintain a fence. Upon a writ of entry to recover the land upon the ground of the breach of the condition, it was held, after a thorough examination of all the authorities, that this condition was personal to George Simpson, and did not attach to the land in the hands of his heirs and assigns.  *Emerson* v. *Simpson*, 43 N. H. 475 ; 1 Washb. Real Prop. 447.

4.    Nor can this clause be treated as a covenant running with the land.    Whatever might be its operation as to Shurtliff, it does

not bind his assigns. "There is a distinction between such covenants as bind assigns, without being named, and such as require them to be named in order to charge them with their performance ; and the distinction seems to be, whether the subject-matter of the covenant is *in esse* at the time or not. If it is, the covenant binds the assignee, whether named or not ; if it is not, it does not bind him, unless expressly named therein." This distinction seems to have originated with *Spencer's* case, but it has always been recognized since, and repeatedly acted upon. And if the assignees are expressly named, the covenant does not run with the land, unless it affects the land itself, or the mode of its occupation. *Spencer's* case, 5 Co. 16 ; *Congleton* v. *Pattison*, 10 East, 130 ; 1 Washb. Real Prop. 330 ; *Emerson* v. *Simpson, supra.*

*L. M. Read*, for the defendant.

The orator is not entitled to the injunction prayed for in his bill of complaint.

1. The deed from the defendant to Roswell G. Shurtliff, contains two conditions, each relating more particularly to a certain portion of the premises conveyed. The second condition relates to the southern portion of the premises, and provides that "no building is to be erected on said land, which shall extend more than twenty feet southerly of the main body of the dwelling-house," &c. The first condition was intended to, and does, relate more particularly to that portion of the premises lying northerly of that point, and provides that "no building or erection is ever to be made on said land, except a dwelling-house and out-buildings for the same, or such other buildings and erections as would not affect the rights, privileges, and interests, of the said Arms, or his heirs or assigns, to a greater degree than a dwelling-house and out-buildings as aforesaid would affect his and their rights, interests, and privileges. The said Arms being now the owner of a house and lands westerly of and near said premises." This deed must be so construed as to give "meaning and effect" to every part of it, and to carry out fully the intent of the parties as gathered from the whole instrument, and viewed in the light of the surrounding circumstances. *Colby* v. *Colby*, 28 Vt. 10 ;

*Flagg, Adm'r,* v. *Eames et als.* 40 Vt. 16 ; *Collins, Adm'r,* v. *Lavelle,* 44 Vt. 230 ; *Gillis* v. *Bailey,* 1 Fost. 149.

This condition, when taken in connection with the situation of the defendant's dwelling-house, and the extensive view to be had from it in an easterly direction, and over the premises conveyed, and the effect upon the value of said house and lands erections upon the granted premises would have, plainly shows that it was the intention of the grantor to provide that nothing sh' uld be erected on the granted premises that would obstruct the view from his dwelling-house to a greater degree than a dwelling-house, &c. would obstruct such view. Yet it cannot be disputed that the erection of a dwelling-house and out-buildings, *in addition* to the church already erected on said ` premises, would obstruct such view to a greater degree than a dwelling-house and out-buildings *without* the church, and therefore such erection would plainly " affect the rights, privileges, and interests of the said Arms, his heirs and assigns, to a greater degree than a dwelling-house and out-buildings would affect his and their rights, privileges, and interests."

The condition in that deed is in the alternative, and permits the erection of either a dwelling-house, &c., or such other buildings, &c.

By the erection of a church on said premises, in 1858, Swett F. Brown, the grantee of said Shurtliff, made choice of the alternative provided for in that condition, and by so doing, forfeited the right to now erect a dwelling-house and out-buildings thereon. If the orator's construction of the condition in that deed is correct, and he has a right, under the deed, to erect a dwelling-house and out-buildings *and* a church, " or such other buildings," &c., then we insist that no " meaning or effect " can be given to that part of the deed, and it might better have been left entirely out of the deed.

The opinion of the court was delivered by

WHEELER, J. The clause in the deed out of which the questions made in this case arise, is in that part of the deed technically called the *premises,* and is a part of the description of the

estate, or interest, which passed by the deed to the grantee, in the land covered by the deed. The word *conditioned*, used in that clause, does not signify that the whole estate in the land passed to the grantee, to remain there if the condition should be complied with, and to revert if it should not; nor is it a covenant, merely, that the grantee will abide by the terms of the condition; but it shows, with the rest of the description, what rights in the land passed to the grantee, and what were left remaining to the grantor. Whatever rights the grantee did take, have passed by conveyances to the orator, and nothing more has so passed, for the grantee could not convey any right that he did not have. Whatever was left to the grantor, now defendant, remains with him still. This clause is to be read together with all the rest of the deed, to ascertain from the whole instrument, what, according to the intention of the parties as collected from the instrument itself, was conveyed, and what left. In this view, the land, with the use of it restricted so that no building or erection, except a dwelling-house and out-buildings for the same, or such other buildings and erections as would not affect the rights, privileges, and interests of the grantor, his heirs or assigns, to a greater degree than a dwelling-house and out-buildings for it would, passed to the grantee. The right to the restriction of the use, remained to the grantor. The grantor then owned a house and land westerly of, and near to, this land, and that fact is recited in the deed in connection with this clause, and is to be considered as a part of the situation of the parties, in connection with the recital, in construing the deed to ascertain what rights, privileges, and interests the grantor had to be affected by buildings or erections on this land. The relation of this land sold, to the house and other land mentioned, should also be considered as a part of the situation. At that time, the land sold was separated by a highway only from the other land, which was on high ground, and from the house and grounds about it there was an extensive view across the part sold. A view from a house, or from grounds about it, would be an important interest to some persons. It is probably true, as claimed for the orator, that one person has no right to control land owned by another, in any respect on account of a view; but

it is equally true that any person has a right to control and dis-
pose of his own land as he sees fit, for the sake of a view, and is
entitled to have the view protected as much as any other interest.
So the defendant, when he owned this land, could, in the disposi-
tion of it, restrict its use as he saw fit, to preserve, or provide for,
a view more or less unobstructed from his house and other lands,
and having done so, he is entitled to enjoy the benefits of the pro-
vision.   The view from his house and other lands was an interest
of his, protected by the restriction.   Whatever would obstruct
this view more than a dwelling-house and out-buildings for the
same upon this land, would be an infringement upon his rights
saved to him by his deed.

A church has already been erected under the rights conveyed
by the defendant's deed, and the orator seeks by his bill in this
case to have the right to erect a dwelling-house and out-buildings
for the same, in addition to the church, established to him.   The
church is a large obstruction to the view, and a dwelling-house
and out-buildings for it, where the orator desires to erect them,
and in the only suitable place upon the land for them, would add
the size of those buildings to the obstruction.   To accede to this
claim of the orator, would be to enlarge the right to erect build-
ings no larger than a dwelling-house and out-buildings ,for it
would be, into a right to erect a dwelling-house, out-buildings for
it, and a church.   This, instead of being an establishment of the
orator in a right he has already, would be establishing to him
an infringement upon the rights of the defendant.

This construction of this deed does not conflict with a proper
application of the rule, that a deed is to be construed most strongly
against the grantor, for it only gives effect to what appears to be
the fair import of the language of the deed, and that rule should
never be applied to take away the effect of such import, when
the import is reasonably plain from the words of the instrument.

Neither do these views conflict in any way with the decision in
*Emerson* v. *Simpson*, 43 N. H. 475, as stated in the brief of the
orator's counsel, for that was a question as to the extent of what
was clearly a condition subsequent, while this is not a deed upon

condition either precedent or subsequent to the passing of the estate conveyed.

If this clause was a covenant in the deed, it probably would run with the land, according to the rule claimed by the orator's counsel, for it would affect the mode of occupation of the land itself; but as before stated, it is not considered to be a covenant.

These considerations lead to the conclusion that the orator is not entitled to the relief asked.