WALTER E. BURGESS et al., Appellees, v. S. M. MAGARIAN et al., Appellants.

No. 40891.

JUNE 24, 1932.

Hallagan, Fountain & Stewart, for appellees.

Paul H. Cunningham, for S. M. Magarian, appellant.

George A. Wilson, for Phillips Petroleum Company, appellant.

Chauncey A. Weaver, for City of Des Moines, appellant.

ALBERT, J.—To a fair understanding of the legal questions involved, we gather the following facts from the record:

Walter E. Burgess, one of the plaintiffs herein, about April 1, 1911, became the owner of 13 acres of land in the northeast quarter of the northwest quarter of section 32, township 78, range 24, West of 5 P. M., Polk county, Iowa, and on April 10, 1920, said acreage was duly platted under the name of "Fairacres" into 64 lots, and the same is now included in and forms a part of the City of Des Moines, Iowa. As thus platted, Fairacres is bounded on the west by Beaver Avenue, on the south by Franklin Avenue, on the east by 38th Street, and divided by 39th, 40th and 40th Street Place. These numbered streets all run north and south, paralleling Beaver Avenue. All of the 64 lots thus platted were deeded to bona-fide purchasers, except lots 5 and 6, which Burgess now owns and occupies for residence purposes, and all of the deeds so conveying the various lots contained the following restrictions, conditions, covenants, agreements and reservations:

"No building or any part thereof shall be placed nearer than 35 feet to the front line of said property."

"No residence on Beaver Avenue, or Fortieth Street Place shall cost less, when completed, than $5,000, and on 38th, 39th and 40th Streets, no less than $3,000, and detached garages shall be situated near the rear of said lot, and not nearer than 20 feet to side street lot line."

"No business or store building shall be placed or constructed on said lot."

"The above restrictions are to remain in force until the year 1950 A. D., at which time they are to expire and be of no further effect."

To the northeast of the intersection of Beaver and Franklin Avenues, lie the 13 acres thus platted. The numbering of the lots started at this corner as lot No. 1, and continued north along Beaver Avenue, the lots being numbered consecutively. Plaintiff Walter E. Burgess is the owner of lots 5 and 6, and Fremont L. Beck is the owner of Lot No. 3 purchased in 1929. On the lots constituting Fairacres, beautiful residences have been constructed in pursuance of and under the provisions and restrictions in the various deeds above set out, and the average valuation of the buildings so constructed is about $8,000.00.

Lots 1 and 2 are the lots in controversy herein. Through a continuous chain of title from Burgess, S. M. Magarian is now the owner of said lots, and when Burgess conveyed these lots to Beatrice and Glen E. Reed, by separate deeds, each deed contained the restrictions and reservations heretofore set out, as did all of the deeds in the chain of title of Magarian except that from his immediate grantor. Magarian entered into a lease contract with the Phillips Petroleum Company for the purpose of erecting a gasoline, oil and service station on said lots 1 and 2, and on April 26, 1929, the City of Des Moines issued a permit to the Petroleum Company to erect a one-story gasoline service station, and to locate the same upon said lots; and the prayer of plaintiffs' petition is that the defendants Magarian and the Phillips Petroleum Company be enjoined from erecting and constructing a building to be used as a business or store building, or any building to be used for any other purpose except for a residence, on said lots, or either of them, until January 1, 1950, and that the City of Des Moines be restrained from granting any permit for any building or buildings not in conformity with the restrictions, covenants, agreements or reservations placed upon said lots, and for such other and further relief as may be equitable, and by amendment, it appearing that such permit had been issued by the City, that the permit be cancelled.

It further appears that the City of Des Moines, in January, 1926, passed a general zoning ordinance affecting all property

in said City. By the terms of said ordinance and the action of the City thereunder, the aforesaid lots 1 and 2 were classified and within the zoning area of that class of property which could be used for commercial purposes. The district court, on the submission of this case, found for the plaintiffs and awarded a permanent injunction against the defendants prohibiting them from the erection of any business or store building, including a gasoline service station, on said lots until the 1st day of January, 1950, and the building permit issued was cancelled, annulled and held of no force and effect; hence this appeal.

Very complete and elaborate arguments are filed discussing, pro and con, the validity and constitutionality of the zoning ordinance of the City of Des Moines; but as will be shown subsequently in this opinion, we are not disposed to pass upon the same because it is not necessary to our conclusion under the record in this case.

By reference to the particular deeds heretofore set out, it is found that the restricted covenants were in all of the deeds in Magarian's chain of title from Burgess, except the one from his immediate grantor, which did not contain such restriction; but Magarian testified that before and at the time he purchased these lots, he knew there were restrictions on the same, but he made no effort to discover what they were. Under such circumstances, the fact that this was a restricted residence district was binding upon him the same as though the particular restrictions were written in his deed. Hegna v. Peters, 199 Iowa 259; Shuler v. Independent Sand & Gravel Co., 203 Iowa 134; Williams v. Hewitt, 106 Pac. (Wash.) 496. That restrictions of this character are covenants running with the land, see Hegna v. Peters, and Shuler v. Independent Sand & Gravel Co., supra; Davis v. Jernigan, 76 S. W. (Ark.) 554; Thornton v. Trammell, 39 Ga. 202; Druecker v. McLaughlin, 85 N. W. (Ill.) 647; Carroll County Academy Co. v. Gallatin Academy Co., 47 S. W. (Ky.) 617; Faith v. Bowles, 37 Atl. (Md.) 711; Cassidy v. Mason, 50 N. E. (Mass.) 1027; Tobey v. Moore, 130 Mass. 448; Thornton v. Natchez, 41 So. (Miss.) 498; St. Peters Church v. Bragaw, 56 S. E. (N. C.) 688; Fuller v. Arms, 45 Vt. 400; Fete v. Foerstel, 139 S. W. (Mo.) 820; Riverbank Improvement Co. v. Bancroft, 95 N. E. (Mass.) 216.

The conclusion to be drawn at this point therefore is

that the lots in question were intended to be used as residential property only, and the provision in the deed so providing was a restrictive covenant, or, as sometimes called, "a negative covenant," and runs with the land, regardless of the number of transfers. We therefore have the lots in such condition that they can not be used for any purpose which violates the restrictive covenant set out in the deed.

Appellants do not, as we understand it, seriously combat this proposition, but their contention is that when the legislature conferred upon the City the power to pass a zoning ordinance and the city properly exercised that power, by so doing and marking this property for commercial purposes, it overrode or wiped out the restrictive covenant above referred to; and this seems to be the serious question in the case.

Zoning ordinances, while of ancient origin, have only become matters of utility in this country in the later years, and while the legislatures of some forty-three states have conferred upon municipalities the power to pass zoning ordinances, the decisions of the various courts are not very numerous on the question; but the cases we have been able to find all point in one direction, and that is, where private restrictive covenants have been placed upon lots or land by agreement of parties, they are controlling, and city zoning ordinances can not override or destroy such private restrictive covenants. In Metzenbaum on the Law of Zoning, p. 282, it is said:

"It is the generally recognized rule—now supported by court adjudication as well—that restrictions written into a deed or otherwise controlling an 'allotment' or privately restricted area, are not abrogated or displaced by the restrictions contained in a zoning ordinance, if the provision in the ordinance is of less restrictive nature than the deed restrictions. For example—if restrictions have been written into deeds, forbidding the use of the property for stores or commercial purposes, and if a zoning ordinance provides that the same property may be used for store or commercial purposes, then the deed or private restrictions continue to control and are not displaced by the less restrictive provision of the zoning ordinance."

This is the rule laid down in Crawford v. Senosky, 274 Pac. (Ore.) 306; Kroner v. City of Portland, 240 Pac. (Ore.) 536;

see also City of Atlantic City v. Atlantic City Steel-Pier Co., 49 Atl. (N. J.) 822; Ludgate v. Somerville, 256 Pac. (Ore.) 1043; Kramer v. Nelson, 208 N. W. (Wis.) 252; Dolan v. Brown, 170 N. E. (Ill.) 425. These decisions all support the conclusion that the power of the city to zone can not override private contracts between parties where the restrictive covenants are in existence at the time the zoning is done. Turning, however, to the city ordinance of Des Moines which is under discussion herein, we find that section 23 of the ordinance reads as follows:

"In interpreting and applying the provisions of this ordinance, they shall be held to be the minimum requirements for the promotion of the public safety, health, convenience, comfort, prosperity and general welfare. It is not intended by this ordinance to interfere with or abrogate or annul any easements, covenants or other agreement between parties."

These provisions of the zoning ordinance clearly are controlling, and show that there was no intention in passing it to void restrictive covenants existing in outstanding deeds or contracts.

It is our conclusion, therefore, that these restrictions in the deeds connected with this Fairacres Addition are restrictive covenants running with the land, are binding on all subsequent purchasers until the year 1950, and the zoning ordinance, by its very terms, does not abrogate or annul these covenants. We reach a conclusion in accord with the district court.

The decree of the district court was entered May 29, 1930. Later a motion was made to modify such decree, and attached to this motion was an affidavit by which it was sought to show that diagonally across the street from the southwest corner of lot 1, an oil station had been constructed, and it was claimed, therefore, that there was such change in the conditions as that a court of equity ought not to enforce these covenants. There is nothing in the record to show any action of the court on this motion to modify the decree, but assuming all that appellants claim in said motion and affidavit to be true, we do not think it is such a change in the situation as would warrant the court in refusing to enforce the restrictive covenants.—Affirmed.

WAGNER, C. J., and STEVENS, DE GRAFF, and GRIMM, JJ., concur.